396 Pa. Superior Ct. 357 (1990)
578 A.2d 942
COMMONWEALTH of Pennsylvania, Appellant,
v.
Drew De MARCO, Appellee.
COMMONWEALTH of Pennsylvania, Appellant,
v.
Blair De MARCO, Appellee.
Supreme Court of Pennsylvania.
Submitted January 18, 1990.
Filed July 26, 1990.
*359 Catherine Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellant.
Dennis J. Cogan, Philadelphia, for appellees.
Before OLSZEWSKI, KELLY and JOHNSON, JJ.
KELLY, Judge:
In this case we are called upon to determine whether the trial court improperly suppressed an answering machine tape upon which incriminating information was recorded, based upon a conclusion that it was subject to statutory exclusion as the fruits of an unlawful interception under the Wiretapping and Electronic Surveillance Control Act. We are also asked to determine if the failure to include a certification of impairment in the notice of appeal is a fatal defect, or whether such an omission may be cured by submission of a separate certification statement.
*360 We find that the separate certification statement filed by the Commonwealth fulfilled the certification requirement. We also find that the trial court erred in suppressing the answering machine tape. Consequently, we reverse the suppression order.

Facts and Procedural History
The facts and procedural history are not in dispute. They may be briefly summarized as follows.
Following a two month investigation, the Philadelphia police applied for, and were granted, a warrant to search appellee's home at 9582-A James Street in Philadelphia. The probable cause affidavit demonstrated probable cause to believe that a substantial bookmaking operation was being conducted on the premises. The search warrant specifically authorized the police to seize telephones, recorders and tapes, among various other items specifically listed. The search produced significant incriminating evidence, including an answering machine tape on which inculpatory statements regarding the gambling operation were recorded. Appellees were arrested and charged with pool-selling and bookmaking offenses.
Prior to trial in the Philadelphia Municipal Court, appellees moved to suppress the answering machine tape because it was made in alleged violation of the Wiretapping and Electronic Surveillance Control Act and was therefore subject to suppression. Philadelphia Municipal Court Judge Morton Krase agreed, and ordered the tape suppressed.
The Commonwealth filed timely notice of appeal of the suppression order to the Philadelphia Common Pleas Court. Appellees, however, filed a motion to quash based upon the absence of the required certification of impairment. Some months later, the Commonwealth filed a supplemental statement certifying impairment. A short time after that, the common pleas court granted the motion to quash specifically dismissing the supplemental certification as untimely. The common pleas court also noted that it agreed with the *361 municipal court suppression order on the merits. This timely appeal followed.

Certification
In Commonwealth v. Dugger, 506 Pa. 537, 486 A.2d 382 (1985), our Supreme Court held that when the Commonwealth certified that the suppression of evidence substantially handicaps the prosecution, "that certification is not contestable," and "in and of itself precipitates and authorizes the appeal." 486 A.2d at 386. See also Commonwealth v. Smith, 518 Pa. 524, 544 A.2d 943 (1988) (plurality). In Dugger, our Supreme Court explained:
From the point of view of the Commonwealth, two possible situations may arise: (a) the order of suppression will result in a termination and conclusion of the prosecution or (b) while the order of suppression will not result in a termination or conclusion of the prosecution, it will result in a prosecution wherein the Commonwealth is substantially handicapped because it cannot present all its available evidence. In the first situation, the element of finality inherent in the order of the suppression is apparent and sufficient to render the order appealable. In the second situation, although the element of finality in the order is not so apparent it is nevertheless present.
Without a right of appeal in the Commonwealth in the second situation, the Commonwealth is completely deprived of any opportunity to secure an appellate court evaluation of the validity of the order of suppression which forces the Commonwealth to trial without all of its evidence. The evidence suppressed may well mark the difference between success and failure in the prosecution; to deny the Commonwealth its only opportunity of securing an appellate review to determine whether the evidence was properly suppressed is highly unfair to the Commonwealth and the interests of society which it represents.
*362 486 A.2d at 385-86, quoting Commonwealth v. Bosurgi, 411 Pa. 56, 63, 190 A.2d 304, 308 (1963). (Emphasis added).
When our Supreme Court spoke to the Commonwealth going to trial "without all of its evidence" (emphasis in original) it referred to the situation where any relevant evidence is suppressed, and not merely where all relevant evidence is suppressed. Our Supreme Court explained the reason for avoiding any fine balancing of the degrees of handicap resulting from various suppression orders as follows:
To require that a suppression record be cluttered with questions of ultimate relevance is senseless. A suppression record ought not, and properly handled does not, disclose the ultimate relevance of a piece of evidence or why a prosecution could not go forth if that evidence is suppressed.
The relevancy of a piece of evidence can rarely be seen outside the context of the case, even then, not always clearly. Most often considerable thought and argument must be supplied before a piece of evidence is clearly discerned as relevant. All relevant evidence may not be necessary to a prosecution, but one piece of suppressed evidence may make all other evidence irrelevant. It is an argument all its own and certainly must be an argument dehors the record of a suppression court.
486 A.2d at 386.
Moreover, under our system of law the slenderest of reeds may sustain a reasonable doubt. Consequently, whenever possible, the prosecution in discharging its responsibility to the community advisably presents multiple proofs of the various elements of an offense to ensure that a strained doubt as to an individual proof does not become the reed by which an acquittal is sustained. When a jury weighs all the evidence in its balance, the absence of a single item of relevant evidence may be the subtle difference which tips the balance. For defendants there are post-verdict appeals to question whether evidence was improperly kept from the scales; for the Commonwealth there *363 are none. Thus it is, that interests of justice generally favor interlocutory review of Commonwealth appeals from suppression orders. See Commonwealth v. Dugger, supra, 486 A.2d at 386; id., 486 A.2d at 387 (Hutchinson, J., concurring). Of course, the general prohibitions and sanctions against frivolous and dilatory appeals apply to these as well as all other appeals. Id.
Commonwealth certification of substantial hardship has been characterized as a prerequisite to appellate review. Commonwealth v. Dugger, supra, 486 A.2d at 387. Moreover, this Court has held that the absence of a proper certification renders a Commonwealth appeal from a suppression order subject to a motion to quash. See Commonwealth v. Slovikosky, 374 Pa.Super. 441, 543 A.2d 553 (1988). As certification was made prior to the order to quash in this case, however, neither Dugger nor Slovikosky can be deemed controlling, or particularly supportive of the quashal order in this case.
Rather, the instant case presents an issue of first impression as to the manner and timing of the certification required when the Commonwealth appeals a suppression order. The notice of appeal submitted by the Commonwealth did not contain the required certification. Appellee filed a motion to quash. While the motion was still pending, though several months after the motion to quash was filed, the Commonwealth filed with the common pleas court a separate certification statement. Shortly after that, the trial court quashed the appeal, dismissing the supplemental certification as untimely.
Neither the parties nor the trial court have cited to this Court any specific case precedent or formal rule (local or general) dictating the manner and timing of the Commonwealth's required certification. Thus, while inclusion of certification in the notice of appeal may certainly be permissible or even preferable, there is as yet no affirmative requirement that the certification be presented at that time, or in that manner. Thus, it is far from clear that the certification was required to be included in the notice of *364 appeal as suggested by appellee and the common pleas court.
Moreover, rules of Appellate Procedure and Rules of Criminal Procedure are to be construed liberally so as to secure and facilitate the just, speedy, and inexpensive administration of justice in this Commonwealth. See Pa.R. A.P. 105; Pa.R.A.P. 107; Pa.R.A.P. 2101; Pa.R.Crim.P. 2; Pa.R.Crim.P. 90; Pa.R.Crim.P. 150. Even if there had been a formally promulgated rule regarding the timing and manner of the required hardship certification, the common pleas court would still have been required to construe it liberally rather than mechanistically. The fact that the time and manner for providing the certification of hardship required for appeals from suppression orders has not been specifically set forth in a procedural rule provides all the more reason for liberality in this respect. Hence, we conclude that formal certification filed anytime prior to the granting of a motion to quash based upon the absence of the certification constitutes sufficient compliance with the certification requirement set forth in Dugger.
Even assuming, arguendo, that our Supreme Court intended certification to be provided in the notice of appeal, it would not follow that the failure to include a certification in the notice of appeal would be a fatal and incurable defect. To the contrary, settled case law in closely analogous cases compels a conclusion that such a defect would be in fact curable.
Procedurally speaking, certification of substantial hardship by the Commonwealth in appeals from suppression orders is closely analogous to the inclusion Pa.R.A.P. 2119(f) statements in briefs seeking to appeal from the discretionary aspects of sentence. In both cases, the absence of the required statement precludes appellate review, as the statement is deemed a procedural prerequisite to appellate review.
In Commonwealth v. Gambal, 522 Pa. 280, 561 A.2d 710 (1989), our Supreme Court held that a panel of this Court *365 had abused its discretion in denying an appellant's prompt application for reconsideration, and for leave to file a supplement to the brief to supply an omitted Pa.R.A.P. 2119(f) statement. In Commonwealth v. Douglass, 370 Pa.Super. 104, 535 A.2d 1172 (1988), a panel of this Court noted that it had exercised its discretion to permit counsel to file a post-argument supplement to cure the omission of a Pa.R. A.P. 2119(f) statement from the appellate brief which had been filed several months earlier. 535 A.2d at 1173; id., 535 A.2d at 1174 (Kelly, J., concurring). Finally, in Commonwealth v. Zeitlen, 366 Pa.Super. 78, 530 A.2d 900 (1987), a panel of this Court exercised its discretion sua sponte to direct counsel to file a supplemental Pa.R.A.P. 2119(f) statement to correct the omission of the required statement from the brief filed on appellant's behalf. In a concurring opinion in Zeitlen, this author explained:
. . . this Court has generally exercised great forbearance in exercising its discretionary powers under Pa.R.A.P. 902 and Pa.R.A.P. 2101 to quash briefs and dismiss appeals. Only on a few occasions, in extreme cases, and with great reluctance has this Court ordered criminal appeals quashed because of counsel's failure to comply with rules of appellate procedure.
In Commonwealth v. Taylor, 306 Pa.Super. 1, 451 A.2d 1360 (1982), we explained:
The Court will not meticulously examine each brief which comes before us with the express intent of suppressing those which contain minor defects or omissions which are correctable through less drastic means. However, where gross deviations from the appellate rules, which substantially impair our ability to exercise the power of review, are present, we will not hesitate to suppress the party's brief and quash the appeal.
451 A.2d at 1361. (Emphasis added). Clearly, the omission in the instant case is "correctable through less drastic means."

*366 Furthermore, it is important to note that the question of whether to quash, dismiss, or deny allowance of a criminal appeal based upon counsel's procedural errors involves constitutional questions which may not lightly be dismissed, and policy considerations which cannot be ignored. When this Court exercises its discretionary authority to quash, dismiss, or deny allowance of appeal based upon procedural defects, it places the entire burden of counsel's errors upon the appellant rather than the offending counsel. In appeals by the Commonwealth, the government's right to challenge an allegedly inappropriate sentence is irretrievably lost. In appeals by a defendant, such an order delays review and merely paves the way for the defendant to file a PCHA petition on the basis of counsel's ineffectiveness with respect to the procedural errors. These are results which should be avoided when possible.

Certainly, this Court must enforce the Pennsylvania Rules of Appellate Procedure. In Commonwealth v. Stoppie, 337 Pa.Super. 235, 236-37, 486 A.2d 994, 995 (1984), this Court noted "a trend in which appellate counsel ignore our appellate rules concerning the preparation of briefs." If this Court merely issues toothless admonitions to counsel, this Court will no doubt continue to suffer more such violations in the years to come.
However, the extreme sanctions of quashing, dismissing, or denying allowance of appeal are not the only responses available to this Court. In Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), the United States Supreme Court noted the existence of appropriate alternative responses when it stated:
To the extent that a State believes its procedural rules are in jeopardy, numerous courses remain open. For example, a State may certainly enforce a vital procedural rule by imposing sanctions against the attorney rather than against the client. Such a course may well be more effective than the alternative of refusing to decide the merits of an appeal and will *367 reduce the possibility that a defendant who was powerless to obey the rules will serve a term in jail on an unlawful conviction [or sentence].
469 U.S. at 399, 105 S.Ct. at 837. I agree; when feasible, the offending counsel rather than the powerless client should bear any penalty for counsel's violation of procedural rules.
I would affirm our statement in Commonwealth v. Taylor, supra, that "the Court will not meticulously examine each brief which comes before us with the express intent of suppressing those which contain minor defects or omissions. . . ." Where defects are in fact minor, no action by this Court is necessary.

When a brief contains substantial defects which command the attention of the Court, but which may be corrected by less drastic means than quashing, dismissing or denying allowance of appeal, the Court may enter appropriate orders directing counsel to bring the brief into compliance with the rules. Such orders may, of course, be enforced by the Court's general contempt powers.
When a brief submitted to the Court is at such variance with the rules as to substantially impair the Court's power of review, and where reasonable, less drastic measures do not exist to correct the defects, the brief will be quashed and the appeal dismissed. Though the burden on appellant is regrettable, this Court cannot act as both court and counsel.
530 A.2d at 903-04 (citations omitted, emphasis added).
Embracing and expanding upon this basic reasoning, both our Supreme Court and a subsequent panel of this Court have found that even when a brief submitted in a criminal appeal is so defective as to require that it be quashed or struck, the appeal itself would not be quashed; rather, new counsel would be appointed and directed to file a conforming brief. See Commonwealth v. Albert, 522 Pa. 331, 335-37, 561 A.2d 736, 738-39 (1989); Commonwealth v. Ely, 381 Pa.Super. 510, 554 A.2d 118 (1988).
*368 Based upon the foregoing, we conclude that while under Albert, Ely and Zeitlen it is apparent that the trial court had discretion as to whether to direct the Commonwealth to correct the defect, nonetheless, under Gambal it would not be necessarily an abuse of discretion to decline to exercise that direction and instead quash an appeal based upon a substantial procedural defect. Commonwealth v. Gambal, supra 561 A.2d at 714; Commonwealth v. Albert, supra, 561 A.2d at 738-39; Commonwealth v. Ely, supra, 554 A.2d at 119; Commonwealth v. Zeitlen, supra, 530 A.2d at 901. However, if before or promptly after an appeal is quashed on such procedural grounds, the appellant (Commonwealth or defendant) seeks allowance to cure the procedural defect, it would be an abuse of discretion to deny allowance to cure the defect. Commonwealth v. Gambal, supra, 561 A.2d at 714.
Neither appellee nor the trial court has advanced any persuasive explanation of how quashing this appeal would advance the interests of justice. If delay was potentially prejudicial in this matter, the trial court could have quashed the appeal promptly thereby triggering a requirement that the Commonwealth seek to cure the procedural defect promptly. (Cf. Commonwealth v. Gambal); or, the trial court could have simply directed the Commonwealth to file the required certification or withdraw the appeal. Cf. Commonwealth v. Albert; Commonwealth v. Ely; Commonwealth v. Zeitlen. While the Commonwealth's delay in seeking to correct its omission is disapproved, we do not find that delay could have warranted the quashing of this appeal. No actual prejudice from the delay was pled or proven.
Consequently, we find that the Commonwealth's supplemental certification of substantial impairment was sufficient to perfect jurisdiction in the common pleas court on the appeal from the municipal court suppression order, notwithstanding the fact that the certification was not contained in the notice of appeal, and despite the fact that a motion to quash based upon the absence of the certification *369 statement had been pending several months before the supplemental certification statement was filed. Even assuming an initial defect, we find that the common pleas court abused its discretion in quashing the Commonwealth's appeal after the supplement curing the defect had been filed.
Ordinarily, the appropriate step to take at this juncture would be to remand to the court of common pleas for review of the suppression order on its merits. In this case, however, remand is unnecessary, as the common pleas court went on to indicate its agreement with the municipal court on the merits of the suppression order, notwithstanding the fact that it quashed the appeal. We deem the common pleas court's expression of its views on the merits to have been an alternate ruling obviating the need for remand which would only further delay ultimate resolution of the suppression issue.

Suppression/Answering Machine Tape
The municipal court held that the answering machine tape must be suppressed because the Commonwealth failed to establish that the persons leaving messages on appellant's answering machine consented to the recording so as to bring the tape within the mutual consent exception to the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. § 5704(4). The common pleas court agreed. We do not.
Heretofore, evidence derived from answering machine tapes have been admitted into evidence without objection on the above grounds in a variety of cases. See Matter of Sylvester, 521 Pa. 300, 307, 555 A.2d 1202, 1205 (1989); Commonwealth v. Hart, 384 Pa.Super. 573, 578-79, 559 A.2d 584, 585 (1989); Commonwealth v. Kozinn, 381 Pa. Super. 64, 552 A.2d 1096 (1989); Commonwealth v. Rozanski, 289 Pa.Super. 531, 537, 433 A.2d 1382, 1385 (1981). The municipal court, nonetheless, concluded that Commonwealth v. Jung, 366 Pa.Super. 438, 531 A.2d 498 (1987), compelled suppression. We do not find Jung controlling.
*370 First, the portion of Jung purporting to address the merits of the Wiretapping and Electronic Surveillance Control Act issues, was (as our learned colleague Judge Johnson observed at the time) entirely dicta, without precedential authority. In Jung, once this Court found that the trial court had acquitted the defendant, all further consideration of the case was superfluous dicta. Commonwealth v. Jung, supra, 531 A.2d at 501-02; id., 531 A.2d at 504 (Johnson, J., concurring).
Second, Jung is materially distinguishable. In Jung, the defendant surreptitiously taped a conversation between himself and another participant in a live phone conversation. In the instant case, appellant set up a phone answering machine and callers left messages on the answering machine tape. While in Jung there was every reason to believe the other party to the conversation might not have known the conversation was being taped, we take judicial notice of the irrefutable fact that any reasonably intelligent person leaving a message on an ordinary answering machine would have to be aware of, and consented by conduct to, the recording of the message on the answering machine tape. Absent some special showing of unique attributes of a particular answering machine cloaking its identity as an answering machine (not suggested here), we cannot imagine how one could not know and intend that the message placed upon the answering machine tape be taped, and by the very act of leaving a message, expressly consent by conduct to the taping of that message. Thus, we find, as a matter of law, that ordinary answering machine tapes fall within the mutual consent provision of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. § 5704(4), are not unlawful interceptions, and are not subject to the statutory exclusionary rule, 18 Pa.C.S.A. § 5721.
Moreover, we do not find that appellant was a "person aggrieved" as that term is defined in 18 Pa.C.S.A. § 5702 and incorporated in 18 Pa.C.S.A. § 5721. Specifically, we find that the legislature could not have intended those provisions to be construed to permit a defendant to *371 seek exclusion of tapes unlawfully made by the defendant which are offered in evidence against the defendant because of inculpatory information contained on the tapes.
Assuming, arguendo, that there was not mutual consent, suppression would be governed by the following statutory provision:
§ 5721. Suppression of contents of intercepted communication or derivative evidence
(a) Motion to suppress.  Any aggrieved person in any trial, hearing, or other adversary proceeding in or before any court or other authority of this Commonwealth may move to suppress the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, on any of the following grounds:

(1) The communication was unlawfully intercepted.

18 Pa.C.S.A. § 5721. (Emphasis added). "Aggrieved person is defined as follows:
§ 5702. Definitions
As used in this chapter, the following words and phrases shall have the meanings given to them in this section unless the context clearly indicates otherwise:

"Aggrieved person." A person who was a party to any intercepted wire, electronic or oral communication or a person against whom the interception was directed.
18 Pa.C.S.A. § 5702. (Emphasis added).
Granted, appellant was unquestionably "a party to" the interception, and thus plausibly falls within the letter of the definition of an "aggrieved person." How, though, could appellant be said to be "aggrieved" in any real sense of that term?
The focus and purpose of the Wiretapping and Electronic Surveillance Control Act is the protection of privacy. With that focus in mind, any construction of the term "aggrieved person" to include the individual responsible for the invasion of privacy involved in an unlawful interception must be rejected as absurd and unreasonable (1 Pa.C.S.A. § 1922(1)), *372 and as being contrary to what "the context clearly indicates otherwise." 18 Pa.C.S.A. § 5702.
The absurdity of such a construction is manifest. If the person who made an unlawful interception could have the interception and all its derivative fruits suppressed, then criminal and civil remedies for violation of the act would be rendered practically impossible to execute. See 18 Pa.C. S.A. § 5703, 5728, 5747. If the interception and its fruits are to be suppressed upon motion of the person who caused the unlawful interception to be made, how is the fact of an unlawful interception to be proved? Are not the tapes of such interceptions or derivative evidence of those tapes commonly the primary evidence of such violations? The legislature could not have intended that such evidence be suppressable at the defendant's request.
The instant case is but a short step removed from the above concededly extreme, reductio ad adsurdum, example. Here, the party setting up the allegedly unlawful interception claims aggrievement from his own illegal act. To do so, however, appellant must shift our focus from the privacy interests which the Wiretapping and Surveillance Control Act is designed to protect, to the tactical prejudice he anticipates from the inculpatory information contained on the answering machine tapes. Therein lies the fallacy.
"Aggrievement" under the Wiretapping and Electronic Surveillance Control Act refers implicitly and unquestionably to the violation of privacy which an unlawful interception involves. In authorizing the suppression of unlawful interceptions and their fruits, the act is intended to mitigate the invasion of privacy involved in the unlawful interception by preventing its use against the person whose privacy was violated in any administrative, civil, or criminal proceeding. Though the price of privacy thus purchased is often steep,[1] it is readily apparent that our legislature weighed society's *373 interests in the personal privacy of individuals against society's interests in having all relevant evidence thus obtained presented in administrative, civil, and criminal proceedings, and found that the balance favored the personal privacy interests of individuals. The wisdom of the balance struck regarding the statutory exclusionary rule is, of course, a question for legislators and voters, rather than judges.
No such opposing interests are presented, however, when it is the person who made the unlawful interception who seeks the statutory suppression. Rather, society's interests in the personal privacy of individuals and society's interests in having all relevant evidence admitted in administrative, civil, and criminal proceedings correspond in favor of denying suppression. Succinctly, if the perpetrator of an unlawful interception is permitted to seek suppression, the Wiretapping and Electronic Surveillance Control Act would provide an inducement, rather than a deterrent, to such unlawful interceptions. On the other hand, if statutory suppression is denied to a person making or causing an unlawful interception to be made, the deterrent to such misconduct would be enhanced, at the same time the interest of justice were enhanced by the availability of the inculpatory evidence derived from the unlawful interception.
Thus, we conclude that a person responsible for, or a party to, the making of an unlawful interception may not be deemed to be an "aggrieved person" entitled to seek statutory suppression under the Wiretapping and Electronic Surveillance Control Act, as no privacy interest of that person was aggrieved by the unlawful interception. Hence, for this reason too, suppression was improper in this case.

Conclusion
Based upon the foregoing, the order quashing the Commonwealth's appeal is Vacated, and the alternate ruling *374 affirming the Municipal Court's suppression order is Reversed. The Municipal Court's suppression order is Reversed. The case is Remanded to the Municipal Court for further proceedings consistent with this Opinion. Jurisdiction is Relinquished.
JOHNSON, J., filed a dissenting opinion.
JOHNSON, Judge, dissenting.
The only issue properly before this court is the appealability of a Municipal Court suppression order to the Court of Common Pleas of Philadelphia County. That latter court had quashed the Commonwealth's appeal due to its failure to file a timely certification of substantial impairment. I find no abuse of discretion by the Court of Common Pleas. Accordingly, I dissent.
Philadelphia police officers executed a search warrant on the home of Drew and Blair De Marco. The officers seized four telephones, three football pools, three sheets of rice paper listing mid-October 1987 football schedules, numerous NFL schedules, numerous pens, two telephone bills, one water bill, one business card listing numerous football bets, a telephone answering machine and a cassette tape taken from inside the telephone answering machine. The De Marcos were arrested and charged with illegal pool selling and bookmaking.
After a hearing, the Municipal Court granted the De Marcos' motion to suppress the audio contents of the seized cassette tape. Nothing else, including the tape itself, was suppressed. On March 23, 1988, the Commonwealth appealed the suppression ruling to the Court of Common Pleas. The appeal papers were neither preceded nor accompanied by a certification from the Commonwealth that the suppression order substantially impaired the prosecution. Commonwealth v. Dugger, 506 Pa. 537, 486 A.2d 382 (1985).
On July 27, 1988, the De Marcos filed a motion to quash the appeal along with a brief addressing the merits. The motion to quash averred, in pertinent part:

*375 3. The appeal is defective on its face, in that the Court of Common Pleas does not have general jurisdiction to review all orders issued in Municipal Court. Rather, jurisdiction in Common Pleas Court, following a grant of a motion to suppress, is limited to circumstances where the Commonwealth certifies that its case is either terminated or substantially impaired as a result of the trial court's suppression order.
4. The failure of the Commonwealth to certify that its case is, at least, substantially impaired as a result of the suppression order divests this court of proper jurisdiction.
Defendants' Motion to Quash The Appeal, filed July 27, 1988, (Emphasis in the original.)
Although the Motion to Quash clearly set forth the basis of the prayer for relief, the Commonwealth took no steps to respond to the motion until March 1, 1989. Then, nearly a full year after the appeal had been taken, and more than seven months after the De Marcos formally raised the issue, the Commonwealth filed its Certificate of Substantial Impairment. The following Monday, the Commonwealth mailed a copy of the certificate to the trial judge and to counsel for the De Marcos.
The majority acknowledges that the certification of substantial hardship is a prerequisite to appellate review under Commonwealth v. Dugger, supra, 506 Pa. at 547, 486 A.2d at 387. The majority also recognizes that this court has followed that rule, and has determined that, if certification is absent, the attempted appeal is subject to being quashed. Commonwealth v. Slovikosky, 374 Pa.Super. 441, 444, 543 A.2d 553, 554 (1988). In addition, the majority necessarily recognizes that quashing an appeal can be an appropriate response if there is a substantial procedural defect. Commonwealth v. Gambal, 522 Pa. 280, 286, 561 A.2d 710, 714 (1989).
In seeking to justify the Commonwealth's dereliction in this matter, the majority would first introduce an element of "prejudice" and "delay" into the analysis. It would then determine that the Commonwealth's "delay" in filing a *376 certification of substantial hardship did not result in any "actual prejudice" and then conclude that the trial court abused its discretion by quashing the Commonwealth's appeal "after the supplement curing the defect had been filed." Majority slip opinion, pages 11-12. I cannot agree with this distortion of the rule set forth in Dugger.
Our Supreme Court declared that the certification of substantial handicap, "in and of itself, precipitates and authorizes the appeal." Dugger, supra, 506 Pa. at 545, 486 A.2d at 386. I understand this to mean that there can be no valid appeal until the certification is filed. In the case now before us, the Commonwealth does not, and could not, contend that it was unaware of the Dugger requirement on March 23, 1988 when it filed its Notice of Commonwealth Appeal. Four months later, the De Marcos made it crystal clear that they intended to have the matter settled, based upon the Commonwealth's failure to comply with the Dugger rule. From the record, I can only conclude that the Commonwealth was content to rest upon a defective notice for nearly a full year after the appeal and more than seven months after the issue was expressly raised.
The Honorable Anthony J. DeFino properly ruled that to recognize such an untimely certification would circumvent its function as a condition precedent to the invocation of appellate jurisdiction. Although not central to the decision of this case, we should not lose sight of the fact that the trial court had only suppressed the audio contents of the seized cassette tape, leaving undisturbed the quantity of other evidence seized by the arresting officers. Remaining undisturbed also are the results of the pen registers attached to the two telephone lines utilized by the De Marcos at the residence here involved.
Did Judge DeFino abuse his discretion by granting the De Marco's unopposed motion to quash the appeal, where the certification of hardship was submitted only after the trial court had indicated it would rule on the motion to suppress and where the Commonwealth relied on caselaw *377 which was inapposite to the matter under review? I conclude that he did not.
The only cases that the Commonwealth cited to Judge DeFino to support the its year-late filing of its certificate were Commonwealth v. Fioretti, 371 Pa.Super. 535, 538 A.2d 570 (1988) and Commonwealth v. Conway, 368 Pa.Super. 488, 534 A.2d 541 (1987). Letter dated March 6, 1989 forwarding Certificate of Substantial Impairment to Judge DeFino. R.R. 14a. Neither of these cases are helpful in resolving the issue presented here. In both cases, our most distinguished colleague, the Honorable Frank J. Montemuro, Jr., found "that the Commonwealth has an absolute right of appeal to this Court to challenge the validity of the. . . . suppression order[s]." Fioretti, 371 Pa.Super. at 538, 538 A.2d at 571; Conway, 368 Pa.Super. at 490, 534 A.2d at 542. In both cases, this court was reviewing suppression orders entered in the Court of Common Pleas. In both cases, the Commonwealth had filed their certification in this court contemporaneous with taking the appeal. In both cases, we did nothing more than restate the law laid down in Dugger.
This appeal, however, raises the issue of why the Commonwealth failed, within a reasonable time, to certify a substantial handicap in the face of a motion to suppress based upon such failure. For reasons not explained, the Commonwealth chose to submit this appeal on briefs rather than undergo examination by this court at oral argument. Absent the tender of any plausible explanation or excuse for the Commonwealth's one year delay in filing the certificate, I refuse to fault the trial court for granting the motion to quash. I therefore must vigorously dissent from so much of the majority opinion as would find an abuse of discretion by the trial court's grant of the motion to quash.
I would also dissent from so much of the majority opinion that would attempt to review the action of the Municipal Court in suppressing the audio content of the cassette tape. Without citation to authority, the majority finds "the common pleas court's expression of its views on the merits to *378 have been an alternate ruling obviating the need for remand." Majority slip opinion, page 12. I find this implausible.
The order from which this appeal has been taken sets forth in its entirety:
ORDER
AND NOW, this 11th day of April 1989, it is the order of this Court that the appeal of the Commonwealth is quashed due to its failure to file a timely certification of substantial impairment.
By virtue of its ruling, the Court did not have to concern itself with the issue concerning the suppression of the audio tape. However, the Court perused this issue and is in accord with the opinion filed by Judge Krase supporting his basis for the granting of the order.
BY THE COURT:
After the Commonwealth perfected its appeal to this Court, Judge DeFino prepared and filed his Opinion pursuant to Pa.R.A.P. 1925. That opinion limits itself to the reasons for the order quashing the appeal. The opinion is silent on all of the issues relating to the suppression of the audio tape. This is consistent with the trial court's recognition that the only issue ripe for review in this court was the order quashing the appeal from the Municipal Court.
The Commonwealth seemingly concedes this. I agree with the Commonwealth's characterization of the trial court's endorsement of the Municipal Court's suppression order as gratuitous. It was not required for disposition of the appeal before Judge DeFino. I would not seek to resolve this issue without the benefit of both the trial court's considered opinion and briefs from the parties directed towards acknowledged issues on appeal arising from clearly determined claims. I feel that we are called upon here only to decide whether the trial court abused its discretion in quashing the appeal from Municipal Court. I would simply hold that it did not. Commonwealth v. *379 Conway, supra, Kelly, J. concurring, 368 Pa.Super. at 501-02, 534 A.2d at 548.
NOTES
[1] That the price of such privacy may be quite high is illustrated in the following scenario. A young woman agrees to go on a date with a young man. The young man forcibly rapes the young woman, confident that she will either not report the rape or that if reported his false claim of consent will raise the required reasonable doubt. The next day, he calls his victim and makes incriminating remarks over the phone. Under the current statute, if the victim had the means and the presence of mind to tape the remarks, the tape of the rapist's inculpatory remarks would be suppressed and she could be charged with a third degree felony.