**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 34 WAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered March 26, 2018 at No. |
| | : | 1818 WDA 2016, reversing the Order |
| v. | : | of the Court of Common Pleas of |
| | : | Allegheny County entered October 31, |
| | : | 2016 at No. CP-02-CR-0003369-2016 |
| JAMES T. BYRD, A/K/A AL-TARIQ | : | and remanding. |
| SHARIF ALI BYRD, | : | |
| | : | SUBMITTED:  October 15, 2019 |
| Appellant | : | |

## OPINION

**JUSTICE MUNDY**                                        **DECIDED: JULY 29, 2020**

In this appeal, we are asked to examine the mutual consent exception to the Wiretapping and Electronic Surveillance Control Act (Wiretap Act), 18 Pa.C.S. § 5704(4).  For the reasons that follow, we hold that prior consent under the mutual consent exception is based on whether an individual knew or should have known they were being recorded.

In April 2015, Appellant, James T. Byrd, a/k/a/ Al-Tariq Sharif Ali Byrd, moved in with Dana Heaps after being released on bail for charges filed in February, 2015 that are unrelated to this case.  While residing with Heaps, Appellant learned she was taking Seroquel, a prescription anti-psychotic medication.  Appellant observed that the medication made her drowsy, and told Heaps that he did not approve of her taking the medicine.  He thereupon took the Seroquel away from her in order to control when she

could take the medication. Unbeknownst to Heaps, on an occasion in mid-May 2015, Appellant apparently gave Heaps a larger dose than was prescribed, causing Heaps to become unconscious.

Later in May, Appellant showed Heaps, and her friend, Carlos Dukes, a cell phone video of Heaps in her state of unconsciousness on the aforementioned occasion. As recounted by Heaps, the video showed Appellant removing her clothes, rubbing his penis on her face, inserting his penis in her mouth, and engaging in vaginal and anal intercourse with her, all while she remained unconscious. Heaps later told investigating officers that Appellant told her the video should serve as a warning to her on the dangers of taking Seroquel.

On June 9, 2015, Appellant was arrested on a parole violation warrant issued by the State of Ohio and recommitted to the Allegheny County Jail. Between June 2015 and February 2016, while incarcerated at the jail, Appellant received several visits from Heaps. At the time, all visits at the Allegheny County Jail were conducted over a closed-circuit system using telephone-like handsets. The visitor entered the visitor's room, and sat at a glass partition with a handset. The inmate receiving the visitor was seated on the other side of the partition with a second handset. To communicate, an inmate picked up the handset and typed in his or her jail identification number. The system then produced a verbal alert that said, "your call is being processed." Before the parties were connected to speak, another verbal alert advised, "this call may be monitored or recorded." Suppression Hearing, N.T., 10/31/16 at 12. Appellant and Heaps communicated via this system each time Heaps visited him at the jail.

In early 2016, Heaps, her boyfriend, and her family, contacted the Duquesne Police Department to report that Appellant was threatening them through phone calls

from the Allegheny County Jail.[1]  As part of its investigation, officers from the Duquesne Police Department interviewed Heaps.  During the interview, Heaps indicated she feared Appellant and had only allowed him to live with her because she felt she had no choice.  Heaps also recounted to police details of the video Appellant had showed her of the sexual assaults he committed against her while she was unconscious.  The officers subsequently interviewed Dukes, who corroborated Appellant's account.  In its investigation of these new allegations, the Commonwealth obtained the recordings of the conversations between Appellant and Heaps made during her jail visits.  In one particular conversation from a visit on February 17, 2016, Appellant and Heaps discussed the May 2015 assault.

As a result of its investigation, the Commonwealth charged Appellant in the instant case with one count of rape of an unconscious victim, two counts of involuntary deviate sexual intercourse of an unconscious victim, two counts of aggravated indecent assault of an unconscious victim, two counts of terroristic threats, and one count each of stalking, indecent assault of an unconscious person, invasion of privacy, and persons not to possess firearms.[2]

Appellant filed a motion to suppress the recordings of the jail visit conversations obtained by the Commonwealth.  Appellant averred the recordings were made in violation of the Wiretap Act, 18 Pa.C.S. §§ 5703-5728.  Section 5703 of the Wiretap Act prohibits a person from intercepting "any wire, electronic or oral communication," except

---

[1] No phone calls placed by Appellant from the jail to anyone outside the jail are at issue in this matter.  The issue in this appeal is confined to the validity of suppression of conversations that took place at the Allegheny County Jail between Appellant and Heaps during her visits.

[2] 18 Pa.C.S. §§ 3121(a)(3), 3123(a)(3), 3125(a)(4), 2706(a)(1), 2709.1(a)(1), 3126(a)(4), 7507.1(a)(1), and 6105(a)(1), respectively.

as provided elsewhere in the Act. 18 Pa.C.S. § 5703.[3] Section 5704 enumerates the exceptions to the Act. Relevant to this appeal are Section 5704(4), the mutual consent exception, and Section 5704(14), the correctional facility exception.[4] The

---

[3] § 5703. Interception, disclosure or use of wire, electronic or oral communications

> Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:
>
> (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;
>
> (2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or
>
> (3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.

18 Pa.C.S. § 5703.

[4] § 5704. Exceptions to prohibition of interception and disclosure of communications

> It shall not be unlawful and no prior court approval shall be required under this chapter for:
>
> . . .
>
> (4) A person, to intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception.
>
> . . .

(continued…)

(…continued)

(14) An investigative officer, a law enforcement officer or employees of a county correctional facility to intercept, record, monitor or divulge any telephone calls from or to an inmate in a facility under the following conditions:

(i) The county correctional facility shall adhere to the following procedures and restrictions when intercepting, recording, monitoring or divulging any telephone calls from or to an inmate in a county correctional facility as provided for by this paragraph:

(A) Before the implementation of this paragraph, all inmates of the facility shall be notified in writing that, as of the effective date of this paragraph, their telephone conversations may be intercepted, recorded, monitored or divulged.

(B) Unless otherwise provided for in this paragraph, after intercepting or recording a telephone conversation, only the superintendent, warden or a designee of the superintendent or warden or other chief administrative official or his or her designee, or law enforcement officers shall have access to that recording.

(C) The contents of an intercepted and recorded telephone conversation shall be divulged only as is necessary to safeguard the orderly operation of the facility, in response to a court order or in the prosecution or investigation of any crime.

(ii) So as to safeguard the attorney-client privilege, the county correctional facility shall not intercept, record, monitor or divulge any conversation between an inmate and an attorney.

(iii) Persons who are calling into a facility to speak to an inmate shall be notified that the call may be recorded or monitored.

(continued…)

Commonwealth asserted the jail visit conversations were admissible under the mutual consent exception.

In his suppression motion, Appellant principally relied on *Commonwealth v. Fant*, 146 A.3d 1254 (Pa. 2016), decided one month prior to Appellant's suppression hearing, in which this Court held that a jail visit conversation conducted via a telephone-like handset does not constitute a "telephone call" as that term was used in the prior version of the correctional facility exception. *Fant*, 146 A.3d at 1260. In a divided decision, this Court held jail visit conversations do not constitute telephone calls. In reaching that conclusion, the Majority focused on the non-involvement of a telephone company as well as the ordinary definition of telephone call. Following our decision in *Fant*, the General Assembly amended Section 5704(14), replacing the "telephone calls" phrase throughout the exception with language permitting law enforcement or correctional facility employees to intercept an inmate's "oral communication, electronic communication or wire communication" as long as the specified criteria in the Section is met. 18 Pa.C.S. § 5704(14) (effective September 5, 2017). Nevertheless, the prior version of the correctional facility exception was still in effect at the time the recording in the instant matter was made. Thus, in an attempt to analogize this case to *Fant*, Appellant asserted, "Allegheny County jail uses a substantially similar system for recording jail visit conversations and consequently any recordings of the defendant's jail

---

(…continued)

> (iv) The superintendent, warden or a designee of the superintendent or warden or other chief administrative official of the county correctional system shall promulgate guidelines to implement the provisions of this paragraph for county correctional facilities.

18 Pa.C.S. § 5704(4), (14) (effective prior to September 5, 2017).

visit conversations must be suppressed." Motion to Suppress, 10/11/16 at 5. A suppression hearing was held on October 31, 2016.[5] Appellant refused to leave his jail cell to attend the hearing, and the defense did not put on any evidence. Defense counsel argued the Allegheny County Jail inmate visit system was substantially similar to the Clinton County system at issue in *Fant*, and thus suppression was warranted under *Fant*. The Commonwealth argued that the Clinton County District Attorney had proceeded under the correctional facility exception of the Wiretap Act in *Fant*, and thus it was inapplicable. The Commonwealth asserted that under the mutual consent exception, recording of the jail visit conversations was not unlawful when the parties had given their prior consent.

At the conclusion of the hearing, the suppression court granted Appellant's motion to suppress in its entirety. The suppression court held that based on this Court's decision in *Fant*, the Commonwealth failed to prove Appellant's prior consent to the interception of his jail visit conversations. Suppression Hearing, N.T., 10/31/16, at 38. The court provided no further explanation or discussion of how it determined that *Fant* controlled the question of consent.[6]

On November 9, 2016, the Commonwealth filed a "Motion to Reconsider Order of Suppression" which reasserted its argument that pursuant to the mutual consent exception to the Wiretap Act, "inmates and visitors at the Allegheny County Jail consent

---

[5] Appellant's suppression motion was heard in a consolidated hearing with his related suppression motion in his case for the February 2015 charges. In that case the court partially granted Appellant's motion. The Commonwealth filed a separate appeal in that matter at Docket 1817 WDA 2016. The Superior Court, in a published opinion, reversed and remanded. *See Commonwealth v. Byrd*, 185 A.3d 1015 (Pa. Super. 2018). Appellant did not file for any further appeal of that case.

[6] The suppression court also failed to make any findings of fact as required by Pennsylvania Rule of Criminal Procedure 581(I); however, the Commonwealth has not challenged this omission.

by their conduct to the interception of their conversations." Motion to Reconsider Order of Suppression, 11/9/16 at 7. The Commonwealth's motion was denied by the suppression court.

The Commonwealth filed a timely notice of appeal.[7] The suppression court filed an opinion in accordance with Pennsylvania Rule of Appellate Procedure 1925(a) outlining its basis for granting Appellant's motion to suppress. The suppression court first recounted the procedure used at the Allegheny County Jail during inmate visits and the communication over a closed-circuit system using telephone-like handsets. The court noted a recording is played stating the visit "may be monitored or recorded" but emphasized "[t]here is nothing in the inmate handbook which indicates that the visits are recorded and there was no testimony regarding whether [Appellant] heard the recording before each visit." Trial Ct. Op., 1/11/17, at 8. The suppression court credited Heaps' testimony that she heard the recording at each visit. Accordingly, the court accepted the presumption urged by the Commonwealth "that by beginning to speak after the recorded statement, [Heaps] signified her consent." *Id.* at 11. However, the suppression court found that the Commonwealth failed to present any evidence that Appellant heard the recording, noting "[i]t is not outside the realm of possibility that [Appellant] did not have the receiver to his ear when the recording played, and therefore may not have heard it." *Id.* The suppression court also emphasized that the Commonwealth conceded that Appellant was not given written notice that he was being recorded, and that there was no such provision in the inmate handbook. *Id.* at 11-12. Therefore, the suppression court concluded that "[b]y failing to establish that [Appellant]

---

[7] At the conclusion of the suppression hearing, the Commonwealth indicated on the record "that the court's ruling substantially handicaps the prosecution . . . and the Commonwealth intends to seek appellate review[.]" *Id.* at 64-65; *see also* Pa.R.A.P. 311(d)

was aware of the recording and consented to it, the Commonwealth has not satisfied the requirements of the mutual consent exception to the Wiretap Act." *Id.* at 12. Thus, the court urged that its decision to grant Appellant's motion to suppress must be affirmed.

On appeal, the Superior Court reversed and remanded for further proceedings. In so doing, the Superior Court noted it was limited to considering "only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." *Commonwealth v. Byrd*, 2018 WL 1465219, at *2 (Pa. Super. Mar. 26, 2018) (unpublished memorandum) (citing *Commonwealth v. Korn*, 139 A.3d 249 (Pa. Super. 2016), *appeal denied*, 159 A.3d 933 (Pa. 2016)). The court further noted that the suppression court's factual findings are binding on the appellate court if supported by the record, but its conclusions of law are not. *Id.* Ultimately, the Superior Court determined the suppression court's factual findings were belied by the record, and the suppression court committed an error of law. *Id.* at *5.

Specifically, the court looked to the record evidence which demonstrated Appellant and Heaps knew they were being recorded. "We reiterate that, as the trial court noted: (1) before an inmate and visitor can converse with one another, a recording stating that the visit 'may be monitored or recorded' is played; and (2) Heaps acknowledged at the suppression hearing that during every one of her visits . . . she heard a recorded message that those visits would be recorded or monitored[.]" *Id.* Further, "one can readily infer that [Appellant] was aware the conversations were being recorded as evidenced by his statements and behavior." *Id.* For example, he specifically told Heaps, "I'm gonna say it on the phone. I don't give a fuck." *Id.* at *3.

The Superior Court also concluded the suppression court committed an error of law because "[t]he mutual consent exception permits interception of conversations in instances where the defendant 'knew or should have known, that the conversation was being recorded.'" *Id.* at *5 (citing *Commonwealth v. Diego*, 119 A.3d 370, 377 (Pa. Super. 2015), *appeal denied*, 129 A.3d 1240 (Pa. 2015)). The court criticized the suppression court's "hyper-technical analysis . . . that in these instances, the Commonwealth must always establish on the record that the inmate had the telephone to his ear, listened to the message that announced the conversation may be recorded, and then consented to the message." *Id.* The court concluded this type of requirement is unreasonable because "an inmate could easily avoid the consent element by simply holding the phone away from his ear for a period of time prior to speaking with a visitor, in order to evade hearing that message." *Id.* Accordingly, the Superior Court held the suppression court's decision was misplaced in relation to both its findings of fact and conclusions of law, and that the mutual consent exception to the Wiretap Act applied. *Id.* Therefore, the Superior Court reversed the order granting suppression, and remanded the matter for further proceedings. *Id.*

Appellant filed a petition for allowance of appeal, which we granted to determine the following issues:

> i. Where an inmate defendant seeks to suppress recordings of his jail visit communications in a criminal proceeding, must the Commonwealth demonstrate that the inmate had actual knowledge that he was being recorded to satisfy the "prior consent" requirement of the [mutual] consent exception to the Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"), 18 Pa.C.S. § 5704(4)?
>
> ii. If actual knowledge is required by the statute, did the Superior Court err in concluding that [Appellant] had actual knowledge that he was being recorded?

*Commonwealth v. Byrd*, 194 A.3d 561 (Pa. 2018) (*per curiam*).

Appellant argues the mutual consent exception to the Wiretap Act is clear and unambiguous. Appellant's Brief at 11. He asserts that under a plain reading of the statute, all parties to the communication must give prior consent to such interception, not implied consent by their purported actions. *Id.* at 12. Appellant asserts the cases set forth by the Commonwealth presenting arguable exceptions to the Wiretap Act under the mutual consent exception are distinguishable because they each involve factual situations distinct from this case. *Id.* He further posits that the Commonwealth must prove his prior consent before recording his conversations. *Id.* at 13. Appellant avers, "[i]nherent in the definition of consent is the awareness and actual knowledge to appreciate the consequences of the decision to consent, and the Commonwealth must prove actual knowledge to avail themselves of the exception." *Id.* at 13-14. Appellant argues that neither he nor Heaps had an interest in having their conversations recorded, but the system did not allow Appellant to deny his consent. *Id.* at 14. Accordingly, Appellant argues the narrow and plain reading of the mutual consent exception to the Wiretap Act must be construed in his favor.

The Commonwealth responds that the "appellate courts of this Commonwealth have ruled that the mutual consent exception permits interception of communications where the parties knew, or reasonably should have known, that their communication was being recorded." Commonwealth's Brief at 12-13.

First, the Commonwealth cites *Commonwealth v. DeMarco*, 578 A.2d 942 (Pa. Super. 1990), which involved the suppression of incriminating messages left on an answering machine. In *DeMarco*, the Superior Court held that the very act of leaving a message on an answering machine was evidence of "express consent by conduct to the taping of that message." *Id.* at 948. Next, the Commonwealth cites *Commonwealth v. Proetto*, 837 A.2d 1163 (Pa. 2003), wherein the Superior Court applied the reasoning in

*DeMarco* to email communications. In *Proetto*, the Court ultimately decided the emails were not "intercepted," but the printing of the emails for the police fell within the mutual consent exception because anyone sending a communication over the internet would be aware that it will be recorded and consents by conduct to the recording. This Court affirmed the Superior Court's holding by *per curiam* order. Finally, the Commonwealth cites *Commonwealth v. Diego*, 119 A.3d 370 (Pa. Super. 2015), where the Superior Court revisited the holding of *DeMarco* regarding text messages turned over to police. While ultimately decided on an alternative basis, the opinion noted that Appellant had knowledge the communication would be automatically recorded. As such, the Commonwealth asserts that "[b]y engaging in a conversation after receiving notice that the conversation may be monitored or recorded, the participants consent to the interception." Commonwealth's Brief at 17.

Pertaining to the second part of Appellant's argument, the Commonwealth provides several examples of recordings that demonstrate Appellant had actual knowledge that he was being recorded. *Id.* at 18-20. Specifically, during a jail visit with Heaps, Appellant stated "I be wanting you to be apprised of everything and know what's going on, but I really can't communicate with you like that, not here anyway[.]" *Id.* at 18 (citing 7/30/15 Recording). He also stated "I swear to God, and - and - I'm gonna say it on the phone, I don't give a fuck." *Id.* at 19 (citing 8/1/15 Recording). Further, a recording demonstrated Appellant and Heaps began to speak before the message warning them it was recorded, and Heaps had to repeat herself.

> Recorded Message: Please enter your . . . (interrupted by touch tone entry)
>
> Recorded Message: Your call is being processed.
>
> Heaps: You look like you gaining some weight.

> Recorded Message: This call may be monitored or recorded.
>
> Heaps: You look like you gaining some weight.
>
> [Appellant]: Not really.

*Id.* at 19-20 (citing 10/26/15 Recording). The Commonwealth asserts these conversations indicate Appellant had actual knowledge he was being recorded. Based on these prior cases, the Commonwealth concludes the interceptions were lawful under the mutual consent exception to the Wiretap Act.

Additionally, the Office of the Attorney General (OAG) filed an amicus curiae brief in support of the Commonwealth. The OAG cites to *Proetto*, arguing this Court by *per curiam* order held that consent under the Wiretap Act may be established by conduct and that there was no burden to prove actual knowledge of the recording to prove consent. The very act of making the communication is demonstrative of express consent. OAG's Brief at 11 (citing *Proetto*, 771 A.2d at 829). The OAG also notes that *Proetto* relied on *DeMarco* which held "any reasonably intelligent person leaving a message on an ordinary answering machine would have to be aware of, and consented by conduct to, the recording of the message[.]" *DeMarco*, 578 A.2d at 948. The OAG further asserts a "reasonably intelligent person" is an objective standard, not a subjective standard, thus it is not what the person "actually knew." OAG's Brief at 12. Finally, the OAG notes that the Wiretap Act has been revised many times following the aforementioned decisions, and the General Assembly has never altered the mutual consent exception to require proof of actual knowledge. *Id.*

We note "[o]ur review is limited to determining whether the record supports the findings of fact of the suppression court and whether the legal conclusions drawn from those findings are correct . . . . We are bound by the factual findings of the suppression court, which are supported by the record, but we are not bound by the suppression

court's legal rulings, which we review *de novo.*" *Commonwealth v. James*, 69 A.3d 180, 186 (Pa. 2013) (citing *Commonwealth v. Briggs,* 12 A.3d 291, 320-21 (Pa. 2011)).

We necessarily begin our analysis with the Wiretap Act. In general, the Wiretap Act "prohibits the interception, disclosure or use of any wire, electronic or oral communication." *Commonwealth v. Deck*, 954 A.2d 603 (Pa. Super. 2008), *appeal denied*, 964 A.2d 1 (Pa. 2009). In his suppression motion, Appellant challenged the recording of his jail visit conversations as a violation of Section 5703 of the Wiretap Act. On appeal, the Commonwealth argued the recording was validly obtained under the mutual consent exception to the Wiretap Act.

Under the plain language of the mutual consent exception, "[i]t shall not be unlawful and no prior court approval shall be required under this chapter for . . . [a] person, to intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception." 18 Pa.C.S. § 5704(4). Appellant asserts to prove "prior consent" the Commonwealth must show that an inmate has actual knowledge that he or she is being recorded. Despite this averment the phrase "actual knowledge" does not appear in the statutory language of the mutual consent exception and Appellant fails to argue any basis for its application as the standard. Rather, our case law illustrates that "prior consent" can be demonstrated when the person being recorded "knew or should have known, that the conversation was being recorded." *Diego*, 119 A.3d at 377. This standard is one of a reasonable person, and not proof of the subjective knowledge of the person being recorded as Appellant advocates.

We find several previous cases on the mutual consent exception instructive. In *DeMarco*, the Superior Court held "we take judicial notice of the irrefutable fact that any reasonably intelligent person leaving a message on an ordinary answering machine

would have to be aware of, and *consented by conduct* to, the recording of the message on the answering machine tape." *DeMarco*, 578 A.2d at 948 (emphasis in original). This reasoning was based in part on its conclusion that, "we cannot imagine how one could not know and intend that the message placed upon the answering machine tape *be taped,* and *by the very act of leaving a message, expressly consent by conduct to the taping of that message."* *Id.* As such, the court held consent can be given by conduct, when the parties knew or should have known they would be recorded.

Similarly, in *Commonwealth v. Cruttenden*, 58 A.3d 95, 98 (Pa. 2012), this Court noted the Superior Court in *Cruttenden* held that "no violation of the [Wiretap] Act had occurred by the female's saving, printing, and forwarding the communications because the communications had been made under the mutual consent exceptions contained in Section 5704 . . . 'by the very act of sending a communication over the Internet, the party expressly consents to the recording of the message.'" *Id.* (citing *Proetto* at 829). Again, the objective reasonable person consents by proceeding with the communication knowing it will be recorded.

The objective standard of a "reasonably intelligent person," who "consent[s] by conduct" through "the very act of leaving a message" set forth in *DeMarco* can be applied herein. *Id.* at 948. The court was not required to examine DeMarco's subjective knowledge prior to leaving the message on the answering machine. Similarly, our focus is not on Appellant's subjective knowledge before proceeding to speak with Heaps. Rather, the standard is the objective knowledge of a reasonably intelligent person following the warning that the call "may be monitored or recorded." After receiving such warning, proceeding to speak into the receiver is consent by conduct and therefore, the recording of such interceptions are not unlawful. Notably, this is also the standard the suppression court correctly applied in determining Heaps consented to be recorded. As

such, this standard should be applied mutually to both parties' actions acknowledging consent to the call. Based on this conclusion, the recording warning Appellant he "may be monitored or recorded," and Appellant's conduct in speaking after the warning, satisfies the mutual consent exception to the Wiretap Act.

Additionally, the Superior Court correctly held that the suppression court's reliance on *Fant* was inapposite. While it is true that the factual scenario in *Fant* is similar to the instant matter, to wit Fant was incarcerated in a county jail and participated in jail visits that occurred face-to-face through glass partitions using telephone-like handsets, the recordings were suppressed as inadmissible under 5704(14) of the Wiretap Act. *Fant*, 146 A.3d at 1256. In the instant matter, the suppression court found *Fant* inapplicable but then proceeded to apply the reasoning of *Fant* pertaining to Section 5704(14) instead of looking to the application of Section 5704(4). As such, both *Fant* and the proof required under Section 5704(14) are not relevant to our discussion.

Based on the foregoing, we affirm Superior Court's order reversing the order granting Appellant's motion to suppress and remanding for further proceedings.


Chief Justice Saylor and Justices Baer, Todd, Donohue, Dougherty, and Wecht join the opinion.