543 A.2d 553

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Ronald F. SLOVIKOSKY.**

Superior Court of Pennsylvania.

Submitted Nov. 18, 1987.

Filed May 26, 1988.

Reargument Denied July 13, 1988.

Theresa Homady, Assistant District Attorney, Ebensburg, for appellant.

Before WIEAND, MONTEMURO and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Cambria County granting a motion to suppress and "sustaining the appeal from summary conviction" by the Commonwealth. We quash.

Before addressing the merits of the Commonwealth's appeal, we must decide whether the order appealed is final. In *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382, (1985), the Supreme Court, in the course of discussing the *sine qua non* for an appeal from an order granting a motion to suppress, reinforced what was intended by *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963), *cert. denied,* 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963). In doing so, it wrote:

> The Superior Court when directed to hear an appeal is required to do so, under the circumstances we direct.[5]
>
>     \*     \*     \*     \*     \*     \*
>
> As the final appellate court we determine both the propriety of hearing an appeal and direct the method it shall be heard. That we directed [in *Bosurgi* ], in the clearest fashion, that the Superior Court is required to hear a Commonwealth appeal from a suppression hearing, ... cannot be doubted.
>
>     \*     \*     \*     \*     \*     \*
>
> [In *Bosurgi,* t]he right of appeal was granted the Commonwealth to satisfy a question of elemental fairness; providing the Commonwealth with what might be their only appeal. To lament that the [Superior] court was not told under what circumstances the suppression order substantially handicaps or terminates a prosecution is simply fatuous and evasive.... They were simply told [by the Supreme Court] to hear and determine the validity of a suppression order when the Commonwealth pleads a substantial handicap or termination. That *certification* is not contestable. It, in and of itself, *precipitates and authorizes the appeal.* The formal purpose of the Supe-

rior Court is to maintain and effectuate the decisional law of this Court as faithfully as possible. In some instances, this being one, we direct the grounds for appeal.

\* \* \* \* \* \*

Therefore, the Commonwealth's appeal of a suppression order is proper as an appeal from a final order when the Commonwealth certifies in good faith that the suppression order terminates or substantially handicaps its prosecution. *Such certification is required as a means of preventing frivolous appeals and appeals intended solely for delay.*

*Given the prerequisite of the certification* [having been met instantly,] we hold that the Commonwealth has an absolute right of appeal to the Superior Court to test the validity of a pre-trial suppression order.

[5] Our authority to adopt such standards is grounded on this Court's general supervisory and administrative authority, 42 Pa.C.S. § 1706, and specifically our authority to adopt procedural rules. 42 Pa.C.S. § 1722. Thus, the Commonwealth's right to appellate review of a suppression order is based on the definition of such an order as "a final order by general rule." 42 Pa.C.S. § 5105(a).

506 Pa. at 543–46 & n. 5, 486 A.2d at 385, 386 & n. 5 (Emphasis added).

■ As stated quite clearly in *Dugger*, the Superior Court, as an intermediate appellate court, acts at the "direction" of the Pennsylvania Supreme Court when it comes to hearing an appeal and under what circumstances such a review is to be conducted.

■ Further, as is applicable to the case at bar, the *Dugger* Court pointed out that the Commonwealth's good faith *certification* that a suppression order terminates or substantially handicaps its prosecution is a condition precedent which "precipitates and authorizes the appeal." In other words, as we interpret *Dugger*, because *certification* is the predicate for an appeal, i.e., authorizes it, the absence of such a *certification* by the Commonwealth "as to the impact of the suppression order upon its case" subjects the appeal to being quashed. *See* Dissenting Opinion by Justice Hutchinson in *Commonwealth v. Duncan*, 514 Pa. 395, 410,

525 A.2d 1177, 1184 (1987); *cf. Commonwealth v. Conway,* 368 Pa.Super. 488, 490, 534 A.2d 541, 542 (1987) ("... our Supreme Court held that the Commonwealth *may* appeal a suppression order *as long as* the Commonwealth certifies in good faith that the suppression order substantially handicaps or terminates the prosecution." (Citation omitted; emphasis added)); *Commonwealth v. Hoffman,* 367 Pa.Super. 79, 532 A.2d 463 (1987) (Statement that the suppression order substantially handicapped the prosecution properly *invoked the jurisdiction* of Superior Court to entertain the appeal from an otherwise interlocutory order).

As an intermediate appellate court acting under the auspices of the Pennsylvania Supreme Court, in regard to maintaining and effectuating the decisional law of this jurisdiction, we find that the Commonwealth's failure to satisfy the "prerequisite" for invocation of appellate jurisdiction to review a suppression order enunciated in *Bosurgi* and clarified by *Dugger* requires that we quash the Commonwealth's appeal.[1] Stated otherwise, the Commonwealth has failed to comply with the dictates of *Dugger* by not "certifying" (either at the hearing granting the motion to suppress or in its brief filed with this Court) that "the suppression order terminate[d] or substantially handicap[ped] its prosecution." Accordingly, we have no "jurisdiction" to hear the Commonwealth's appeal and must quash to implement the Supreme Court's objective in requiring such a certification, i.e., a means to prevent frivolous appeals or appeals intended solely for delay. *Dugger, supra; Commonwealth v. Hunsberger,* 358 Pa.Super. 207, 209–11, 516 A.2d 1257, 1258 (1986).

■ As for that portion of the order sustaining the appeal from summary conviction, we note, initially, that it is interlocutory. The reason is, in this jurisdiction, a Common Pleas Court must find a defendant either "guilty" or "not guilty" vis-a-vis "dismissing" or "sustaining" his/her appeal from a summary conviction so as to render it final for

---

1. *Cf. Commonwealth v. Hawthorne,* 364 Pa.Super. 125, 527 A.2d 559 (1987), allocatur denied 517 Pa. 592, 535 A.2d 81 (1988).

appeal purposes. See *Commonwealth v. Morgenthaler*, 320 Pa.Super. 120, 466 A.2d 1091 (1983).

 Moreover, even if, *arguendo*, we were to read the lower court's "sustaining" of the defendant's appeal as equivalent to a "not guilty" verdict, the prosecution would be prohibited from appealing the same.[2] See *Commonwealth v. Jung*, 366 Pa.Super. 438, 531 A.2d 498 (1987).

Therefore, for the reasons herein stated, the Commonwealth's appeal of that portion of the court's order granting the defendant's motion to suppress is quashed for non-compliance with *Dugger*. As for that portion of the same order "sustaining" the defendant's appeal of his summary conviction and the Commonwealth perfecting an appeal therefrom, we likewise quash. See *Morgenthaler*, supra.

Appeal quashed. Jurisdiction is relinquished.

MONTEMURO, J., files a concurring opinion.

WIEAND, J., files a dissenting opinion.

MONTEMURO, Judge, concurring:

I concur in Judge Popovich's conclusion that this appeal should be quashed because of the Commonwealth's failure

2. Because the record discloses that no de novo trial had commenced, so as to trigger the truth-determining process—only a suppression hearing was being conducted, the court below acted prematurely in sustaining the defendant's appeal from summary conviction. Compare *Commonwealth v. Jung*, 366 Pa.Super. 438, 531 A.2d 498 (1987).

At the completion of the suppression hearing both parties were given the opportunity to submit briefs. Thereafter, the court entered the order which is the subject of the instant appeal.

We observe that the proper course that should have been followed by the court below, in regard to sustaining the defendant's appeal from summary conviction, was to have entered its suppression order and allowed the prosecution to take an appeal in conformance with *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985), and not have "sustained" the defendant's appeal from summary conviction until after the prosecution had been afforded the chance to present its case against the defendant, if one could have been made, in the context of a trial, a fact which did not occur at bar. See discussion supra.

We note, for edification purposes, if such had occurred, the Commonwealth would be precluded from perfecting an appeal from a "not guilty" verdict. See *Jung*, supra.

to certify that the suppression order "terminates or substantially handicaps the litigation." *See Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985) (Commonwealth appeal of suppression order is proper as an appeal from a final order only when Commonwealth complies with the certification procedure). However, I do not believe that it is necessary to analyze the portion of the trial court's order purporting to sustain the defendant's summary appeal. Because it is clear that only a suppression hearing was being conducted and the truth-determining process had not yet begun, I would simply find that the language purporting to sustain the appeal is superfluous and treat the order as granting appellee's suppression motion. Accordingly, I would not treat this order as comprised of two distinct parts, but rather exclusively as a suppression order, and would quash the Commonwealth's appeal for failing to comply with the dictates of *Dugger, supra.*

WIEAND, Judge, dissenting:

I respectfully dissent. In my judgment, this appeal is jurisdictionally proper and should be considered on its merits. Moreover, because the trial court erred in sustaining Slovikosky's appeal from a summary conviction, I would reverse and remand for further proceedings.

Ronald F. Slovikosky, while driving a Mack truck, was stopped by Trooper R.K. McDowell of the Pennsylvania State Police, and his truck was weighed. It was found to be overweight by 3500 lbs. After Slovikosky had been found guilty of violating 75 Pa.C.S. § 4941(a) before a district justice, he appealed to the court of common pleas. There, he filed a pre-trial motion to suppress evidence of the weight of his vehicle on grounds that he had been subjected to an illegal search and seizure. After hearing, the trial court entered an order as follows:

AND NOW, on this 23rd day of March, 1987, after consideration of the briefs and arguments of counsel, it is hereby ORDERED that the Motion to Suppress filed on

behalf of the defendant is GRANTED and the Appeal from Summary Conviction is SUSTAINED.

This order, in my judgment, has effectively terminated any further prosecution. It has not only suppressed the evidence of Slovikosky's alleged violation, but it has also put the Commonwealth out of court by sustaining the appeal and dismissing the prosecution. Because this is a final order, I would hold that the Commonwealth's appeal is jurisdictionally proper and review the merits of the trial court's order which sustained the defendant's appeal and dismissed the prosecution.

This order was entered before jeopardy had attached. It dismissed the prosecution prior to trial for legal reasons not directly concerned with guilt or innocence. Therefore, it was not the same as an acquittal or a finding of "not guilty." An appeal by the Commonwealth from such an order is not barred by principles of double jeopardy. See: *Commonwealth v. Wimberly*, 488 Pa. 169, 411 A.2d 1193 (1980); *Commonwealth v. Adams*, 349 Pa.Super. 200, 502 A.2d 1345 (1986); *Commonwealth v. Dincel*, 311 Pa.Super. 470, 457 A.2d 1278 (1983).

The trial court suppressed evidence that appellee's truck was overweight because it determined that the police had not been "engaged in a systematic program of checking vehicles" and, therefore, had subjected Slovikosky to an unreasonable search and seizure.

In *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the United States Supreme Court held that if police are given unrestrained discretion as to whom to stop, the stopping of a vehicle for a license check is a violation of the driver's Fourth Amendment right to be free of unreasonable searches and seizures and, therefore, is constitutionally impermissible. The Court implied, however, that methods for spot checks which did not involve unconstrained exercise of discretion would be permissible. The Supreme Court of Pennsylvania reached a similar conclusion and sounded a similar caveat in *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973). Its decision, it

said, "should not be read as applicable to systematic stops or roadblocks for detection of Motor Vehicle Code violations." *Id.*, 453 Pa. at 110 n. 3, 307 A.2d at 877 n. 3.

Article I, Section 8 of the Pennsylvania Constitution also contains language which is intended to protect citizens against unreasonable searches and seizures. Reasonableness under this constitutional guarantee is to be determined in cases of this nature by a "balancing of interests approach." *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987). See also: *Commonwealth v. Johnston*, 515 Pa. 454, 530 A.2d 74 (1987).

In conducting a balancing of interests approach in the instant case, we must remember that we are dealing with heavy trucks which are subject to greater governmental regulation than automobiles because of their burden and heightened danger to the highway system. We must, then, balance the rights of the operators of commercial trucks against the expressed governmental interest in maintaining a safe system of highways. *Commonwealth v. Berry*, 305 Pa.Super. 8, 14, 451 A.2d 4, 7 (1982).

Consistently with these decisions, the legislature in Pennsylvania has authorized police officers, when "engaged in a systematic program of checking vehicles or drivers," to stop vehicles to obtain information necessary to enforce provisions of the Vehicle Code. 75 Pa.C.S. § 6308(b). A systematic program for weighing trucks, I would hold, is minimally intrusive and does not constitute an unreasonable search and seizure.

It remains to be determined whether the state police in this case were engaged in a systematic program for checking weights of trucks or whether the program permitted an unrestrained exercise of discretion by the police regarding those trucks to be weighed. In the instant case, the pattern was to stop two trucks and cause them to be weighed. In the meantime, other trucks were permitted to proceed. When the first two trucks had been weighed and had continued on their ways, the police stopped two additional

trucks. While these vehicles were being weighed, traffic again flowed uninterrupted.

The trial court found that this system permitted the police to exercise an unrestrained discretion and, therefore, that the weighing of selected trucks was an unreasonable search and seizure. In doing so, the trial court relied upon this Court's decision in *Commonwealth v. Tarbert*, 348 Pa.Super. 306, 502 A.2d 221 (1985), which held constitutionally impermissible all police roadblocks which stopped vehicles travelling on a public highway for the purpose of determining whether the drivers were under the influence of alcohol. This holding, however, was reversed by the Supreme Court, which held that "a drunk-driver roadblock conducted substantially in compliance with [enumerated] guidelines would reduce the intrusiveness to a degree which, when balanced against the public interest in apprehending such drivers, would not violate Article I, Section 8 of the Pennsylvania Constitution." *Commonwealth v. Tarbert, supra* 517 Pa. at 293, 535 A.2d at 1043.

In *Wysocki v. PennDOT*, 91 Pa.Commw. 42, 496 A.2d 897 (1985), *affirmed on different grounds*, 517 Pa. 175, 535 A.2d 77 (1987), the police had stopped all cars going in both directions on a highway to check for intoxication until all troopers had become occupied; and, thereafter, those cars not stopped were allowed to pass undisturbed. The Commonwealth Court held that such a system was regular, methodical, and left nothing to the discretion of the police. Therefore, the Court concluded, the program was constitutionally permissible.

"It cannot be doubted that the police powers of this Commonwealth are particularly broad in matters pertaining to highway safety." *Commonwealth v. Tarbert, supra* 517 Pa. at 297, 535 A.2d at 1045. When the interest of the Commonwealth in maintaining safe highways is balanced against the interests of commercial truckers in the unimpeded use of those highways, I would hold, as did the Commonwealth Court, that a system which weighs all approaching trucks until the officers are occupied, while unstopped

trucks are allowed to proceed, is minimally intrusive and not a violation of constitutional safeguards against unreasonable searches and seizures.

I would reverse and remand for further proceedings.