**COMMONWEALTH of Pennsylvania,
Appellant,**

v.

**Robert C. KELLER, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 14, 2003.
Filed May 5, 2003.

Patrick T. Barry, Asst. Dist. Atty., Reading, for Com., appellant.

David R. Eshelman, Reading, for appellee.

BEFORE: STEVENS, GRACI, and OLSZEWSKI, JJ.

OPINION BY GRACI, J.:

¶ 1 Appellant, the Commonwealth, appeals from the order filed in the Court of Common Pleas of Berks County on February 13, 2002, granting the motions of Appellee, Robert C. Keller ("Keller"), to suppress his blood-alcohol content ("BAC") test results and for a writ of habeas corpus with respect to the charge of driving with a BAC of .10% or greater. After careful review, we reverse and remand.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 Through its findings of fact[1] and Pa.R.A.P. 1925(a) opinion, the lower court provided the background of this case as follows:

1. On January 31, 2001 at approximately 12:50 A.M., an accident came to the attention of Joseph Lowe. Mr. Lowe lives at 3900 Pricetown Road, Ruscambanor Township, Berks County,

---

1. The Commonwealth agreed that these factual findings are supported by the record. Appellant's Brief, at 6–7.

Pennsylvania. He immediately dialed 9–1–1 and the police came within 10–15 minutes.

2. Trooper Nicholas Scianna of the Pennsylvania State Police was dispatched to the accident scene.

3. Trooper Scianna arrived on the scene at approximately 1:03 A.M. He observed a vehicle with heavy front end damage. Corporal Shell, also of the Pennsylvania State Police, was already on the scene.

4. Trooper Scianna spoke to the operator of the vehicle who told him that a deer had jumped in front of the car as he was returning from a friend's house. The driver of this vehicle was identified as the Defendant, Robert Keller.

5. The Defendant's car was off the road in a grass embankment in contact with a tree. The road was wet that evening.

6. While speaking to the Defendant, the trooper detected an odor of alcoholic beverage emanating from his breath, as well as glassy, bloodshot eyes. He also observed that the driver was bleeding profusely from his face.

7. The trooper informed the Defendant that he was going to be arrested for Driving Under the Influence of Alcohol. The Defendant was then put into an ambulance.

8. The ambulance began to drive away. The trooper stopped the ambulance, went inside the back of the ambulance, and began reading the Defendant O'Connell warnings.[2]

9. Trooper Scianna was unable to remember what Defendant's response was to these warnings.

10. The ambulance transported the Defendant to Lehigh Valley Hospital.

11. Corporal Shell then called the State Police headquarters and told them that he wanted to get blood-alcohol test results from the Defendant.

12. Trooper Debellis of the Pennsylvania State Police received a teletype to have the Defendant's blood drawn at Lehigh Valley Hospital.

13. Trooper Debellis proceeded to Lehigh Valley Hospital and filled out a Toxicology Request form.... Subsequently, Lehigh Valley Hospital mailed a report of the blood test results to the State Police. This report indicated a BAC of 0.28%.

. . .

Findings of Fact, 2/13/02, at 2–3.

The Defendant [was] charged with two counts of Driving Under the Influence of Alcohol, 75 Pa.C.S.A. § 3731(a)(1) and 75 Pa.C.S.A. § 3731(a)(4)(i), Driving on Roadways Laned for Traffic (Summary), 75 Pa. C.S.A. § 3309(1), Careless Driving (Summary), 75 Pa.C.S.A. § 3714, Restraint Systems (Summary), 75 Pa. C.S.A. § 4581(a)(2), and Driving Vehicle at Safe Speed (Summary), 75 Pa.C.S.A. § 3361. The Defendant was originally charged with the above offenses by way of a complaint dated February 6, 2001. A Preliminary Hearing was held on May 16, 2001 before District Justice Ronald C. Mest and all of the misdemeanor

---

2. Under the rule announced by the Pennsylvania Supreme Court in *Com., Dept. of Transp., Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873, 878 (1989), when a licensee requests to speak to or call an attorney or anyone else when asked to take a breathalyzer test, in addition to telling the licensee that his or her license will be suspended for one year if the licensee refuses to take the test, a police officer must also instruct the licensee that the rights to a lawyer or to call do not apply to breathalyzer tests, and that the licensee does not have the right to consult with an attorney or anyone else before taking the test.

charges were dismissed. The Commonwealth subsequently withdrew all of the summary charges.

The affiant filed a second identical complaint on May 30, 2001. The Preliminary Hearing was held on October 3, 2001 before District Justice Ronald C. Mest. This time, all of the charges were bound over to the Court of Common Pleas. Following Arraignment on October 29, 2001, the Defendant filed an Omnibus Pretrial Motion on November 26, 2001, requesting a Motion to Suppress, a Motion to Quash Information, and a Motion for a Writ of Habeas Corpus. A Pretrial Hearing was held before [the trial court] on December 18, 2001. On February 13, 2002, [the trial court] issued Findings of Fact and Conclusions of Law, granting Defendant's Motion to Suppress, but only as to blood test results and granting Defendant's Motion for a Writ of Habeas Corpus as to count 2 of the information.

1925(a) Opinion, 6/7/02, at 1–2.

¶ 3 On March 14, 2002, the Commonwealth filed a timely notice of appeal and now raises the following issues:

A. Whether the trial court erred in suppressing the evidence where the police were entitled to receive appellee's blood test results without a warrant pursuant to 75 Pa.C.S. §§ 1547 and 3755?

. . .

B. Whether the trial court erred in granting appellee's writ of habeas corpus as [sic] 75 Pa.C.S. § 3731(a)(4) where the Commonwealth presented *prima facie* evidence of a violation?

**3.** Keller argues that a search warrant was required in the instant case pursuant to Article I, Section 8 of the Pennsylvania Constitution. However, he does not argue that a

. . .

Appellant's Brief, at 4.

## II. DISCUSSION

¶ 4 The Commonwealth first argues that the trial court erred in suppressing the evidence regarding Keller's BAC since the police received Keller's BAC test results without a warrant.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879, 880–81 (1998) (citations omitted).

¶ 5 Article I, Section 8 of the Pennsylvania Constitution protects citizens from "unreasonable searches and seizures...." *Commonwealth v. Reppert,* 814 A.2d 1196, 1201 (Pa.Super.2002) (citations omitted).[3] The protection of Article I, Section 8 extends "to those areas where one has a reasonable expectation of privacy." *Commonwealth v. Barton,* 456 Pa.Super. 290, 690 A.2d 293, 296 (1997) (citation omitted). "The courts of this Commonwealth have continued to recognize that the citizens of Pennsylvania have a reasonable expectation of privacy in their medical

warrant was required under the Fourth Amendment to the United States Constitution. Accordingly, we confine our discussion to the State Constitution.

records." *Id.* (citation omitted). However, "this privacy interest does not preclude all searches and seizures of medical records." *Id.* "[T]he proper function of ... Art. I, § 8 of the Pennsylvania Constitution, is 'to constrain, not against *all* intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner.'" *Id.* "Therefore, Appellant's privacy interest is subject to reasonable searches and seizures." *Id.*

■ ¶ 6 Generally, under the protections afforded by Article I, Section 8, "a search or seizure is not reasonable unless it is conducted pursuant to a search warrant issued by a magistrate upon a showing of probable cause." *Id.* (citation omitted). "The 'implied consent' provision of the Motor Vehicle Code, however, dispenses with the need to obtain a warrant." *Id.* (citing 75 Pa.C.S.A. § 1547(a)(1)). Section 1547(a)(1) of the Motor Vehicle Code states:

(a) **General Rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purposes of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both....

75 Pa.C.S.A. § 1547(a)(1); *Barton*, 690 A.2d at 296. The "reasonable grounds" requirement of this provision "has been interpreted to require probable cause." *Barton*, 690 A.2d at 296 (citation omitted).

¶ 7 Also applicable to the instant case is Section 3755 of the Motor Vehicle Code, which provides:

If, as a result of a motor vehicle accident, the person who drove, ... any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing....

75 Pa.C.S.A. § 3755(a).

¶ 8 Our courts have found that Sections 1547 and 3755, together,

comprise a statutory scheme which, under particular circumstances, not only imply the consent of a driver to undergo chemical or blood tests, but also require hospital personnel to withdraw blood from a person, and release the test results, at the request of a police officer who has probable cause to believe the person was operating a vehicle while under the influence.

*Barton*, 690 A.2d at 296 (citation omitted).

¶ 9 In the instant case, the trial court relied on *Commonwealth v. Shaw*, 564 Pa. 617, 770 A.2d 295 (2001), in suppressing the results of Keller's BAC test. According to the trial court,

11. ... the majority in *Shaw* believed that a warrant is required prior to the police obtaining the results of a BAC test where the suspect is unable to respond to the standard O'Connell warnings....

12. There is no evidence that [Keller] consented to the blood-alcohol test result being released because Trooper Scianna cannot remember and did not

testify to what [Keller's] response was to the O'Connell warnings.

13. This Court feels constrained to follow *Shaw, supra.* Therefore, the blood test result will be suppressed and is not admissible at trial.

Conclusions of Law, 2/13/02, at 6.

¶ 10 We disagree. In *Shaw,* there was no request to perform a BAC test, and hospital personnel did not perform the BAC test as a result of a duty arising out of Section 3755. Rather, the appellant's BAC test was conducted for independent medical purposes. Therefore, the *Shaw* Court held that the release of the appellant's BAC test, taken for independent medical purposes and not pursuant to Section 3755(a), without a warrant and in the absence of exigent circumstances, violated Article I, Section 8 of the Pennsylvania Constitution. Accordingly, the appellant's BAC test results should have been suppressed.

 ¶ 11 In the instant case, however, a police officer specifically requested that a BAC test be performed at Lehigh Valley Hospital. Moreover, as we stated above, Sections 1547 and 3755, together,

> comprise a statutory scheme which, under particular circumstances, not only imply the consent of a driver to undergo chemical or blood tests, but also require hospital personnel to withdraw blood from a person, and release the test results, at the request of a police officer who has probable cause to believe the person was operating a vehicle while under the influence.

*Barton,* 690 A.2d at 296 (citations omitted); *see also Commonwealth v. Seibert,* 799 A.2d 54, 64 (Pa.Super.2002). Here, Keller never disputed that Trooper Scianna had probable cause to believe that Keller was driving under the influence of alcohol. Consequently, Keller's consent to undergo

chemical or blood tests was implied, and Lehigh Valley Hospital personnel were required to withdraw blood from Keller and release the test results. Therefore, we find that the trial court erred in suppressing Keller's BAC test results.

 ¶ 12 Next, the Commonwealth argues that the trial court erred in granting Keller's writ of habeas corpus with respect to the count of Driving Under the Influence of Alcohol under Section 3731(a)(4)(i) since the Commonwealth presented *prima facie* evidence that Keller was operating his vehicle with a BAC greater than 0.10%.

> The decision to grant or deny a petition for writ of habeas corpus will be reversed on appeal only for a manifest abuse of discretion. It is settled that a petition for writ of habeas corpus is the proper means for testing a pre-trial finding that the Commonwealth has sufficient evidence to establish a *prima facie* case. Although a habeas corpus hearing is similar to a preliminary hearing, in a habeas corpus proceeding the Commonwealth has the opportunity to present additional evidence to establish that the defendant has committed the elements of the offense charged.
>
> A *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. The Commonwealth need not prove the defendant's guilt beyond a reasonable doubt. Rather, the Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury.

*Commonwealth v. Fountain*, 811 A.2d 24, 25–26 (Pa.Super.2002) (quotations, quotation marks, and citation omitted). "In determining the presence or absence of a prima facie case, inferences reasonably drawn from the evidence of record that would support a verdict of guilty are to be given effect, but suspicion and conjecture are not evidence and are unacceptable as such." *Commonwealth v. Packard*, 767 A.2d 1068, 1071 (Pa.Super.2001) (citation omitted).

> [T]he scope of evidence which a trial court may consider in determining whether to grant a pretrial writ of habeas corpus is *not* limited to the evidence as presented at the preliminary hearing. On the contrary, ... the Commonwealth may present additional evidence at the habeas corpus stage in its effort to establish at least *prima facie* that a crime has been committed and that the accused is the person who committed it.

\* \* \* \* \* \*

> ... In the pretrial setting, the focus of the habeas corpus hearing is to determine whether sufficient Commonwealth evidence exists to require a defendant to be held in government "custody" until he may be brought to trial. To make this determination, the trial court should accept into evidence the record from the preliminary hearing as well as any additional evidence which the Commonwealth may have available to further provide its *prima facie* case.

*Commonwealth v. Jackson*, 809 A.2d 411, 416 (Pa.Super.2002) (quotation omitted) (emphasis in original).

¶ 13 Since it is clear that the trial court's granting of habeas corpus in the instant case was the result of its belief that Keller's BAC test results should have been suppressed, we could reverse the granting of habeas corpus based solely on the wrongful suppression. However, because the granting of habeas corpus was an improper remedy, even if exclusion at trial was appropriate, we feel compelled to write further.

■ ¶ 14 In *United States v. Blue*, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966), the United States Supreme Court stated that, even if the government acquired illegal evidence, the defendant would "at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial." According to the Court:

> Our numerous precedents ordering the exclusion of ... illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether. So drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book.

*Id.*[4] Thus, the remedy for illegally obtained evidence is suppression of the evi-

---

4. We recognize that we are not bound by decisions of the United States Supreme Court interpreting the federal Constitution when we interpret our Pennsylvania Constitution, as here. *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81, 88 (1988). We are, however, persuaded by the rationale of *Blue* and, hence, adopt it, in the absence of any contrary decision from the Pennsylvania Supreme Court, for purposes of resolving the present claim. *See Blystone*, 549 A.2d at 88. We

note that our Supreme Court's decision in *Commonwealth v. Gibson*, 536 Pa. 123, 638 A.2d 203 (1994), is not to the contrary. We first observe that *Gibson* involved a claim under the Fourth Amendment and not under Article I, Section 8. In addition, different from this case which is an appeal by the Commonwealth from an order granting suppression and dismissing a prosecution before trial, *Gibson* involved a defendant's appeal following conviction at which the allegedly

dence and its exclusion at trial, not dismissal of the case. *See id.* (remanding the case to the trial court to proceed on the merits but leaving the defendant free to file motions to suppress and objections to evidence); *see also Commonwealth v. Gelineau,* 696 A.2d 188, 196 (Pa.Super.1997) (affirming the trial court's order to suppress evidence but vacating the order granting habeas corpus relief and dismissing the Commonwealth's case).[5]

¶ 15 In the instant case, Keller was charged with Driving Under the Influence of Alcohol pursuant to Section 3731(a)(4)(i). In order to prove a charge under Section 3731(a)(4)(i), the Commonwealth must "prove two elements: (1) that the accused was driving, operating or in control of a vehicle, and (2) that the accused had an amount of alcohol in the blood that was equal to or greater than 0.10% by weight." *Commonwealth v. Wanner,* 413 Pa.Super. 442, 605 A.2d 805, 807 (1992) (citation omitted); *see also* 75 Pa.C.S.A. § 3731(a)(4)(i).

¶ 16 Here, the Commonwealth chose not to rely on the preliminary hearing transcript but instead produced witnesses and evidence. *See Jackson.* That record establishes that Keller's vehicle was off the road in a grass embankment in contact with a tree and that it sustained heavy front end damage. The Commonwealth's evidence shows that Keller was the driver of the car, that Keller was bleeding pro-

---

improperly seized evidence was admitted and formed the basis of the prosecution's case supporting conviction. Also, *Gibson* involved a prosecution for a summary offense. The Court in *Gibson* clearly states that "[t]he remedy for an illegal search is exclusion of all the evidence derived from the illegal search." *Id.* at 206–07 (citing *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). This is the rule we apply here. The question posed in *Gibson* was *"whether the police may* make a warrantless entry into an apartment in the absence of any belief that illegal activity is being conducted, and, on the basis of information obtained thereafter, *issue a citation for the summary offense of underage drinking."* *Id.* at 205 (emphasis added). The Court answered by stating: "In this case, the observations of the police, including the identification of the appellants as underage, were fruits of the illegal search. Without this evidence, *the citations issued to the appellants cannot stand and are reversed."* *Id.* at 207 (emphasis added). The Court then reversed the order of this Court (which had affirmed the judgment of sentence) and ordered the appellants discharged. Thus, the remedy in *Gibson* flowed from the procedural posture of the case, an appeal from the conviction on the summary offense. As such, it does not control the disposition of this pretrial appeal from an order suppressing evidence and dismissing a prosecution.

5. Indeed, even if the trooper in the instant case obtained Keller's BAC test results illegal-

ly, the charge under Section 3731(a)(4)(i) should not have been dismissed since that same evidence might have been obtained under an exception to the rule excluding all evidence that is the "fruit of the poisonous tree." For example, it is possible that Keller's BAC test results could have been obtained legally by an independent investigator engaged in a totally separate investigation. *See Commonwealth v. Smith,* 808 A.2d 215, 223 (Pa.Super.2002) (finding that even though evidence was initially illegally seized by a state police trooper, it was nevertheless admissible under the independent source doctrine because it was later obtained by a detective with the district attorney's office involved in a separate investigation months after the illegal actions of the state trooper from two independent witnesses who were not even mentioned in the trooper's report). By granting the writ of habeas corpus and dismissing this count, the trial court deprived the Commonwealth of any possibility of proving its case by other legally obtained evidence (if there was any). We recognize, of course, that it may be that the prosecution will not be able to prove its case at trial as a result of a suppression order. That, however, is not a basis as we explain above for granting a pretrial writ of habeas corpus. In those instances, the Commonwealth will generally move to dismiss or *nol pros* the charges to which the suppressed evidence applies.

fusely from his face, and that his BAC was 0.28% shortly after the accident. Read in the light most favorable to the Commonwealth, this evidence sufficiently establishes the offense proscribed by Section 3731(a)(4)(i) and that Keller probably committed it. *See Fountain,* 811 A.2d at 26. If presented at trial and accepted as true, this evidence would warrant a judge allowing the case to go to the jury. *See id.*

¶ 17 That the BAC results might be subject to exclusion at trial (and we have determined that that conclusion was in error) is irrelevant to the question of whether or not the evidence established a *prima facie* case. The effect of this ruling was to dismiss this charge because the trial court determined that the evidence was illegally seized. As explained above, that was an improper remedy. Accordingly, we find that the trial court committed a manifest abuse of its discretion when it granted habeas corpus relief, as the Commonwealth had met its burden of establishing, at least *prima facie,* that Keller committed the act proscribed under Section 3731(a)(4)(i).[6]

### III. CONCLUSION

¶ 18 The trial court erred in suppressing Keller's BAC test results. Moreover, the trial court committed a manifest abuse of its discretion in granting habeas corpus relief with respect to the charge of driving with a BAC of .10% or greater since the Commonwealth's evidence produced at the pretrial hearing clearly established a *prima facie* case and since dismissal of a prosecution is an improper remedy, in any event, for the illegal seizure of evidence.

¶ 19 Order suppressing evidence of BAC test results and granting writ of habeas

corpus as to the charge under Section 3731(a)(4)(i) reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

---

**6.** Keller argues that *Commonwealth v. Loeper,* 541 Pa. 393, 663 A.2d 669 (1995), controls the outcome of the second issue. Different from the instant case, *Loeper* involves the issue of sufficiency of the evidence at trial, not before trial. Therefore, *Loeper* is inapplicable to the instant case, and Keller's reliance on it is misplaced.